**John O. VARTAN**

v.

**Robert N.C. NIX, Jr.**

**No. CIV. A. 96–6365.**

United States District Court, E.D. Pennsylvania.

Jan. 29, 1997.

John P. Krill, Jr., Andrew L. Swope, Kirkpatrick & Lockhart, Harrisburg, PA, for Plaintiff.

Paul H. Titus, Jospeh P. McHugh, Titus & McConomy, LLP, for Defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff John O. Vartan ("Vartan") has sued defendant Robert N.C. Nix, Jr., the former Chief Justice of the Supreme Court of Pennsylvania ("Chief Justice Nix"). Plaintiff claims that the defendant, when he was Chief Justice, directly intervened to cause the termination of an agreement between plaintiff and the Commonwealth of Pennsylvania, acting through the Administrative Office of the Pennsylvania Courts. Under that agreement plaintiff was to construct and then to lease to the Commonwealth for 29 years a new courthouse in Harrisburg for the Commonwealth Court. No claim for breach of contract is alleged. Instead, plaintiff has asserted claims under 42 U.S.C. § 1983.[1] According to the complaint, the defendant, as a result of his "arbitrary, capricious, and irrational actions," violated plaintiff's procedural and substantive due process rights under the Fourteenth Amendment to the Constitution.

Pending before the court is the motion of the defendant under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim

---

1. Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

upon which relief can be granted. He also argues that the case is barred by the statute of limitations.[2] Finally, defendant seeks to strike certain paragraphs of the complaint as containing scandalous material pursuant to Rule 12(f).

A motion to dismiss for failure to state a claim should only be granted if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). All allegations in plaintiff's complaint are accepted as true, and we must draw any reasonable inferences from such allegations in plaintiff's favor. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1391 (3d Cir.1994). On a motion to dismiss, the court may consider not only the complaint but also "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Id.* at 1384 n. 2; *accord Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

The first issue before this court is whether plaintiff has stated a viable claim for denial of procedural due process. Plaintiff argues that he was entitled to a pretermination hearing before his contract with the Commonwealth could be terminated. Since plaintiff alleges that no such hearing was afforded, he maintains his constitutional right to procedural due process has been infringed.

█ To resolve the procedural due process claim, we must decide whether the property interest asserted is constitutionally protect-ed. *Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989). A contract or mutually explicit understanding with a public entity may be subject to such protection. *Perry v. Sindermann*, 408 U.S. 593, 599–602, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972). However, only certain such property interests fall under the constitutional umbrella. If it were otherwise, we would face the daunting prospect of the "wholesale federalization of state public contract law." *Reich*, 883 F.2d at 242.

Public contracts involving "extreme dependence" such as welfare benefits or "permanence" such as tenured employment and social security benefits, have a protected status under the Fourteenth Amendment. *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1399–1400 (3d Cir.1991); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985). Cases, including several in this Circuit, also contain language that a protected property right includes a public contract which may be terminated only "for cause." *See Loudermill*, 470 U.S. at 538–39, 105 S.Ct. at 1491–92; *Unger*, 928 F.2d at 1399; *Reich*, 883 F.2d at 242–43.

Plaintiff argues that his contract could be terminated solely for cause and therefore he was entitled to a pretermination hearing. We will assume without deciding that plaintiff's characterization of his lengthy and complex contract with the Commonwealth is correct.[3] Even so, the cases do not support plaintiff's position. Recognizing "the severity of depriving a person of the means of livelihood," the United States Supreme Court in *Loudermill* did hold that a public employee, who was subject to discharge only for

---

**2.** The court initially granted defendant's motion to dismiss on the ground that the action was time barred. We did not pass upon the other issues raised. Contending that the court had erred, the plaintiff filed a motion to alter or amend the judgment. The court then heard oral argument on all issues identified in defendant's motion to dismiss. We have now vacated our previous order and decide the motion on different grounds.

**3.** Paragraph 4(b) of the agreement provides in pertinent part:

(b) *Tenant's Approvals.* Promptly after the execution of this Lease, Tenant may, but shall not be obligated to seek to obtain such resolutions or enactments or approvals from the legislative, judicial and/or executive branches of the Commonwealth of Pennsylvania as Tenant, in its sole opinion, deems necessary and appropriate with respect to this Lease. If within 60 days from the execution of this Lease Tenant has not received such resolutions, enactments or other approvals as Tenant, in its sole opinion, deems appropriate, Tenant shall have the right, exercised in writing not later than five business days after the end of such 60 day period, to terminate this Lease by written notice to Landlord....

cause, was entitled to pretermination process, at least under the circumstances presented. *Id.* at 543, 105 S.Ct. at 1493–94. However, the Court emphasized the special nature of the employment relationship. *Id.* at 542–43, 105 S.Ct. at 1493–94. The Third Circuit's decision in *Unger* involved a contract between a physician and Temple University which discontinued a graduate program in which she was enrolled. *Unger*, 928 F.2d at 1393–94, 1399. Because the physician's contract involved neither "extreme dependence," nor permanence, and was terminable at will, her complaint failed to state a claim for procedural due process. *Id.* at 1399. *Reich* concerned an agreement for a lawyer's services which was terminable at will. That was only one of several factors the court considered in deciding that no protected property interest existed. *Reich*, 883 F.2d at 242–43. In none of these cases was found the type of contract presented here. We do not read *Loudermill*, or the Third Circuit's decisions such as *Unger* and *Reich*, as holding that commercial contracts terminable only for cause automatically implicate the Fourteenth Amendment.[4] Vartan's position would be a giant leap that we are not prepared to take. We disagree with plaintiff that a right to procedural due process exists simply because the public entity may not abrogate the contract at will.

■ To determine whether plaintiff is entitled to a predeprivation hearing under § 1983, we must instead look to the Supreme Court's test as set forth by the Court of Appeals in *Reich:*

> in order to determine whether predeprivation process was required, we must apply the familiar tripartite test set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Under that test, we must weigh the importance of the interest of which the plaintiff is being deprived, the extent, if any, to which the particular procedure contended for will reduce the risk of an erroneous deprivation, and the burden that would be imposed upon the government if that predeprivation process were required.

*Reich*, 883 F.2d at 242.

■ Under the first part of the *Mathews* tripartite test, we note that Vartan merely seeks monetary damages arising out of Chief Justice Nix's conduct in causing a breach of a contract. There is no allegation of irreparable harm. We acknowledge that the contract is not of a routine nature and involves a substantial sum of money. It calls for the construction of a courthouse for a Pennsylvania appellate court, with the subsequent lease of the building to the Commonwealth for 29 years. Nonetheless, as important as this matter may be to the plaintiff, the dispute simply concerns an entrepreneurial venture that apparently unravelled. In kind and degree, it is quite unlike the situation presented in the often cited case of *Loudermill* where a person's livelihood was at stake. The plaintiff's interest here does not rise to the level where a predeprivation process is required. *See Reich*, 883 F.2d at 242–43.

Under the second element of the *Mathews* test, we must consider the extent to which a pretermination proceeding will "reduce the risk of an erroneous deprivation." *Reich*, 883 F.2d at 242. Under this element we should consider the "fairness and reliability of existing procedures, and the probable value, if any, of additional procedural safeguards." *Mathews*, 424 U.S. at 343, 96 S.Ct. at 907. Vartan contends that a predeprivation hearing would have revealed Chief Justice Nix as the "real decisionmaker" and "might have changed the outcome." Post Argument Memorandum of Plaintiff in Opposition to Motion to Dismiss at 6 (emphasis added). That is highly unlikely. Chief Justice Nix did not sign the contract. Any predeprivation hearing would be minimal, re-

---

4. We note that the Supreme Court granted a writ of certiorari in *Homar v. Gilbert*, 89 F.3d 1009 (3d Cir.1996), *cert. granted*, —— U.S. ——, 117 S.Ct. 678, 136 L.Ed.2d 604 (1997). In that case, the plaintiff was a police officer at a state university who had been suspended without pay and eventually demoted because of an arrest on drug-related charges. *Id.* at 1011. The Court of Appeals in a 2 to 1 decision held that "a governmental employer may not suspend an employee without pay unless that suspension is preceded by some kind of pre-suspension hearing, providing the employee with notice and an opportunity to be heard." *Id.* at 1016. Judge Alito dissented. *Id.* at 1023.

quiring only "notice and an opportunity to respond." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1489. Revealing the identity of the "real decisionmaker" would not be the purpose of such a hearing. Thus, the additional safeguard of a predeprivation hearing would have had little value to Vartan in the context of an action against Chief Justice Nix.

Moreover, we conclude that an adequate postdeprivation remedy exists. Currently pending before the Pennsylvania Board of Claims is plaintiff's claim against the Commonwealth for $6,500,000 for breach of the very contract which is the subject of this lawsuit. The Board of Claims maintains exclusive jurisdiction over contract disputes involving the Commonwealth where the amount in controversy exceeds $300.[5] 72 Pa. Cons.Stat. Ann. § 4651–4. An appeal from the Board of Claims lies in the Pennsylvania Commonwealth Court. 42 Pa. Cons.Stat. Ann. § 4651–1. Plaintiff does not and cannot claim that this available mechanism lacks procedural due process. *See DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 596–98 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995).

Finally, we must consider the burden on the government if "predeprivation process were required." *Reich,* 883 F.2d at 242. The Commonwealth, of course, is a party to innumerable commercial contracts, large and small. Potentially every contract dispute would become a matter of constitutional dimension. If so, a contract could not be terminated or a payment refused without first holding a due process hearing. The cost, both administrative and judicial, would undoubtedly be enormous if such a requirement were imposed. *Id.* at 242–43. On the other hand, the only detriment to plaintiff, if his contract claim is meritorious, is some delay in receiving what is due—a fact of life for anyone suing for money damages. *Id.* at 243. Even then, plaintiff would receive interest to compensate him for any delay. The burden on the government of predeprivation hearings in commercial contract cases such

as this would clearly outweigh any benefit to the claimant.

In *Vartan v. Sobolevitch,* 783 F.Supp. 911 (M.D.Pa.1991), *aff'd,* 968 F.2d 15 (3d Cir. 1992), Judge Caldwell had before him the identical contract we have present here. Instead of Chief Justice Nix, Vartan there had sued Nancy Sobolevitch, the Court Administrator of Pennsylvania. He claimed she had violated his procedural due process rights in failing to afford him a predeprivation hearing. After engaging in the same analysis we have employed, Judge Caldwell dismissed the complaint for failure to state a constitutional claim. The Court of Appeals affirmed.

Plaintiff argues that *Sobolevitch* differs from the pending case because the defendant here is of a higher rank—a Chief Justice rather than a Court Administrator. We think plaintiff's focus is misplaced. It is not the identity of the state official doing the harm that is critical. Rather, the significant factor is the nature of the harm to the plaintiff, regardless of which state official has caused it.

In summary, plaintiff has not met the tripartite test for a claim for denial of procedural due process under the Fourteenth Amendment.[6]

■ We turn next to the question whether Vartan has stated a claim for denial of substantive due process. Even if a property interest is subject to procedural due process, it is not necessarily encompassed within notions of substantive due process. *Reich,* 883 F.2d at 244. Conversely, our determination that plaintiff failed to state a procedural due process claim does not preclude our consideration of his substantive due process claim. *See DeBlasio,* 53 F.3d at 598.

■ To date, the Court of Appeals has provided no clear cut formula for determining whether an interest rises to the level of substantive due process protection, other than stating that "a plaintiff must have been deprived of a particular quality of property

---

**5.** The Board of Claims is composed of three members, one of whom must be an attorney and one a civil engineer. 72 Pa. Cons.Stat. Ann. § 4651–1.

**6.** Because of our holding, we need not decide whether plaintiff is collaterally estopped from raising this issue because of *Sobolevitch.*

interest." *DeBlasio*, 53 F.3d at 600; *accord Homar*, 89 F.3d at 1021. Nonetheless, certain precedents exist to guide us.

In *Ransom v. Marrazzo*, 848 F.2d 398, 411–12 (3d Cir.1988), the Court of Appeals refused to recognize a customer's substantive due process right when the City of Philadelphia conditioned the receipt of water and sewer services on the payment of past due charges left by the prior owner. Thereafter, in *Reich*, the court had to determine whether plaintiff, an attorney engaged by Washington County, Pennsylvania to prosecute the County Controller, was deprived of substantive due process. *Reich*, 883 F.2d at 239–40. That same Controller, who was acquitted, refused at the end of the case to authorize the payment of the attorney's fees. *Id.* Instead of suing in state court for what was owed, the attorney brought a civil rights action against the Controller and Washington County in federal court under 42 U.S.C. § 1983. *Id.* at 240. The district court dismissed the complaint. *Id.* The Court of Appeals agreed that substantive due process was not implicated. *Id.* at 244. It concluded, "[w]e can think of no basis for according substantive due process protection to this interest while denying it to those who have had their utility service terminated." *Id.* at 245.

Plaintiff further argues that the Court of Appeals decisions in *DeBlasio* and *Neiderhiser v. Borough of Berwick*, 840 F.2d 213 (3d Cir.), *cert. denied*, 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988) support his claim for denial of substantive due process. We find both to be inapposite. *DeBlasio* involved a property owner who sought a variance before a local zoning board. *DeBlasio*, 53 F.3d at 594–95. He contended that one of the zoning board members acted with a conflict of interest. *Id.* at 601–02. The court held:

> in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached

*Id.* Vartan's claim has nothing to do with a governmental decision limiting how he may use his land.

Similarly, *Neiderhiser* also concerned a property owner who sought an exemption from a local zoning board based on a long-standing prior non-conforming use. *Neiderhiser*, 840 F.2d at 214. The property owner operated a business that included the sale and rental of "adult movies." *Id.* The zoning board allegedly denied the exemption because of the subject matter of these movies. *Id.* at 214–15. He also alleged that there was an attempt to coerce him into a settlement requiring him to comply with an ordinance which unconstitutionally limited his right to freedom of speech. *Id.* at 215. Reversing the district court for improperly dismissing the complaint, the Court of Appeals held that the plaintiff had stated viable claims under 42 U.S.C. § 1983 based upon the alleged violations of his due process and free expression rights. *Id.* at 217–18. Again, Vartan's claim does not involve a zoning board's arbitrary decision to limit the use of his property nor does it relate in any way to his rights under the First Amendment.[7]

The parties have cited no precedent in this circuit and we have found none which has given a constitutional gloss to a commercial construction contract and lease such as confronts us here. We do not believe that plaintiff's due process claims under 42 U.S.C. § 1983 are more worthy than those in *Ransom*, *Reich* and *Unger*. Plaintiff's alleged property interest is not of the "certain quality" found in *Loudermill*, *DeBlasio* and *Neiderhiser*.

As a result of our decision, we need not reach the other issues raised by defendant. We will dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

---

7. Vartan's original response to the motion to dismiss argued that because his contract could only be terminated "for cause," it was a property right protected by substantive due process. In his assertion, Vartan relied on *Unger* and *Black-* *well v. Mayor and Commissioners of Delmar*, 841 F.Supp. 151 (D.Md.1993). However, these cases addressed only procedural due process. *Unger*, 928 F.2d at 1393–94; *Blackwell*, 841 F.Supp. at 154–56.

*ORDER*

AND NOW, this 29th day of January, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the complaint of plaintiff John O. Vartan is DISMISSED for failure to state a claim upon which relief can be granted; and

(2) the motion to strike portions of the complaint is DENIED as moot.